THE STATE, EX REL. BLACKMAN ET AL., *v.* HITTE ET AL.

[Cite as State, ex rel. Blackman, *v.* Hitte (1983), 5 Ohio St. 3d 156.]

(No. 82-1606—Decided June 15, 1983.)

157

*Messrs. Mark Clark & Associates* and *Mr. John S. Mengle,* for relators.
*Messrs. Kirby & Powers* and *Mr. Dallas P. Powers,* for respondents.

*Per Curiam.*

I

Respondent Hitte found each of the petitions defective because they failed "to state which removal procedure is demanded." In this court respondents argue specifically that each petition failed to be identified as a recall petition or to request a recall election as the means of removal. Relators, on the other hand, argue that a recall election is the only means available to electors under the charter.

We find the answer in the language of Section 4.06 of the Springboro charter which provides, in part:

"* * * [A] petition demanding * * * [an elected officer's] removal may be filed with the Clerk of Council who shall note thereon the name and address of the elector filing the petition, and the date of such filing. * * *

"* * * If the Clerk of Council shall find the petition sufficient, the Clerk shall promptly so certify to the Council, shall deliver a copy of such certificate to the officer whose removal is sought, and shall make a record of such delivery. *If such officer shall not resign* within five (5) days after the day on which such delivery shall have been made, the *Council shall* thereupon *fix a day for holding a recall election,* not less than six (6) days nor more than seventy-five (75) days after the date of such delivery." (Emphasis added.) Therefore, under the Springboro charter, the petition need not specify that removal be by a recall election because the officer has the option of resigning *before* the village council may authorize an election.

II

Respondent Hitte also found all five petitions to be defective because they did not conform with R.C. 3501.38 (J), which provides:

"All declarations of candidacy, nominating petitions, or other petitions under this section shall be accompanied by the following statement in bold face capital letters: THE PENALTY FOR ELECTION FALSIFICATION IS IMPRISONMENT FOR NOT MORE THAN SIX MONTHS, OR A FINE OF NOT MORE THAN ONE THOUSAND DOLLARS, OR BOTH." In her certificate of insufficiency, respondent Hitte stated — and respondents argue before this court — that the Springboro charter defers to state law on this issue. We disagree.

Section 4.06 of the charter provides, in pertinent part: "* * * such recall *election* [shall be] conducted by the Board of Elections of Warren County, Ohio, as stated in Section 11.02 * * *." (Emphasis added.) Section 11.02 provides, in part: "Conduct of Elections. Both regular and special Municipal *elections* shall be conducted by the Board of Elections of Warren County, Ohio,

under the provisions of this Charter. Where the Charter is silent, the provisions of the State election law shall be followed. * * *'' (Emphasis added.) First, we note that both of these provisions deal with the conduct of *elections* rather than the components of recall petitions. Furthermore, this court has already held that a municipal charter takes precedence over the Revised Code in matters relating to referenda.

"R.C. 731.41 excludes municipalities which have adopted charter provisions for referendums and initiatives from compliance with R.C. 731.28 through 731.41. *Dillon* v. *Cleveland* (1927), 117 Ohio St. 258; *State, ex rel. Ohio National Bank,* v. *Lancione* (1978), 54 Ohio St. 2d 416 [8 O.O.3d 412]. Sections 49 and 50 of the Cleveland City Charter contain such provisions.

"Thus, in *Ohio National Bank, supra,* at 418, this court in finding R.C. 3501.38 (E) inapplicable to the circulators' petitions stated: 'It is apparent, therefore, that the circulators need not be in compliance with R.C. 731.29 to 731.40, or other provisions of the Revised Code relating to a referendum, but must be in compliance with the city charter.' " *State, ex rel. Madison,* v. *Cotner* (1981), 66 Ohio St. 2d 448, 451 [20 O.O.3d 381]. In light of the logic of *Madison* and *Ohio National Bank,* as well as the limited language of Sections 4.06 and 11.02 of the charter, we need not impose the requirements of R.C. 3501.38(J) on relators' petitions.

### III

Respondent Hitte also decided that the petitions filed regarding respondents West, Thomas and Miller — each of whom represents a single ward — were defective. Section 4.06 of the charter provides, in part: "* * * Such petition shall be signed by the number of electors which equals twenty-five (25) percent of the total number of electors voting for the candidate for Councilmember." Respondents argue that this language requires that each petition contain the signatures of twenty-five percent of the "* * * *total of all* electors voting in the election for *candidates* for *the office of councilmember*" (emphasis added) — *i.e.,* twenty-five percent of the total of all electors voting in all wards for all candidates for council. We disagree.

Rather, we view the language "twenty-five (25) percent of the total number of electors voting for the candidates for Councilmember" as meaning twenty-five percent of the electors voting for council in that ward — at least as applied to petitions regarding councilmembers representing a single ward. Under respondents' approach, it is conceivable that a councilmember could avoid a recall election although most of his constituency had signed a recall petition. The charter, in our opinion, does not provide this protection for incumbent councilmembers.

### IV

Respondents also argue that relators' petitions violate the following provision of Section 4.06 of the Charter: "* * * Such petition may be circulated in separate parts, but the separate parts shall be bound together and filed as one instrument. Each part shall contain the name and office of the person

whose removal is sought, and a statement in *not more than two hundred (200) words* of the grounds for removal." (Emphasis added.) Respondents acknowledge that the petitions which were filed with the clerk were each between ninety-four and one hundred twenty-seven words long. Yet, they contend that a one hundred twenty-seven word circular, which was distributed to the public while the petitions were being circulated, was effectively part of the petitions.

Respondent Hitte, however, failed to certify any perceived violation of the two hundred word limit in violation of Section 4.06 of the charter, which provides, in part:

"If the Clerk of Council shall find the petition insufficient, *the Clerk shall promptly certify the particulars* in which the petition is defective, deliver a copy of the certificate to the person who filed the petition with the Clerk, and make a record of such delivery. Such person shall be allowed a period of twenty (20) days after the day on which such delivery was made in which to make the petition sufficient." (Emphasis added.) Cf. *Madison, supra* (66 Ohio St. 2d), at 450. The issue of whether the petitions contained too many words is not, therefore, properly before this court.

## V

Respondents argue that mandamus is improper because relators have failed to exhaust their "administrative remedy" of making the petitions sufficient. We disagree.

In light of our disposition of respondents' other contentions, it is obvious that the petitions were indeed sufficient. Under the Springboro charter, therefore: (1) respondent Hitte was under a *clear legal duty* to "* * * certify to the Council, * * * deliver a copy of such certificate to the officer whose removal is sought, and * * * make a record of such delivery"; (2) relators had a *clear legal right* to certification; and (3) respondents have failed to demonstrate that relators had any *plain and adequate remedy at law.* See *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42 [15 O.O.3d 53], paragraph one of the syllabus.

Accordingly, we allow the writ of mandamus and order respondents to perform their respective mandatory duties — as required by the Springboro charter — and to submit the issue of whether each of the respondents named in relators' petitions should continue in his or her respective office to the electors of the village of Springboro. We also order that this recall election take place no later than July 12, 1983.

This court has full power in exercising its original jurisdiction to take all steps necessary to carry its order and judgment into execution. By virtue of that power, and in order that the will of the people not be frustrated in the event respondents fail to comply with this order, it will be deemed self-executing. The Clerk of the Ohio Supreme Court shall immediately certify this judgment to the Secretary of State and, in the event of respondents' noncompliance, the Secretary of State is directed upon the force of this order

to utilize such portion of this order as is necessary to conduct his special election no later than July 12, 1983. See *Madison, supra,* at 452.

*Writ allowed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.